Please be seated. Thank you. Will the clerk please call the next case? 116-2468 Virgilio Carrino v. Campbell Thank you. Counsel, you may proceed. Good morning, Justices, Counsel. Andrew Kriegel here on behalf of the Plaintiff Appellant Virgilio Carrino. I'm sure the Justices have read all the parties' briefs. I'd like to iterate that our contention is the Commission erred as a matter of law, and it's denying plaintiffs' Section 19-H and 8-A petitions. The plaintiff's contention in the law here in Illinois is clear that if a work-related injury is a cause or a contributing factor, then compensation is allowed even if natural degeneration or other factors contributed to a disability. So to put it another way, it doesn't have to be the sole or primary cause as long as it is a cause of death? Yes, Your Honor. We understand that. The plaintiff contends that there is absolutely no dispute that his work injury was at least a cause or did cause or contribute to his 2005 back surgery. Specifically, I'd like to point to the Commission's statement that the plaintiff's condition in his low back was a result of the natural aging process due to a previous injury in back surgery. And Respondent's Section 12 Examiner also testified that the plaintiff's condition was a result of degenerative changes at L4-L5 secondary to multiple surgeries. What did Dr. Cornwett have to say? Well, among other things, Dr. Cornwett stated it's our contention that the condition was a result of degenerative changes secondary to multiple surgeries. He also attributed the condition to other comorbidities such as prostate issues, things of that nature that were unrelated to the back. He also testified, did he not, that all of the complaints were not related to his work injury one year after he had surgery, which was performed in March of 17, didn't he say that? He said surgery in March of 1997. 1997, yes. Yes, he did, Your Honor, but the Commission had already ruled upon that those two surgeries prior to the initial arbitration hearing were causally related. Yeah, there's no question about it. He said one year after those surgeries, it was all over with. Didn't he also say that his current condition was related to degenerative disc disease and was not related in any way to the work accidents? Yes, he did, Your Honor. So why is it as a matter of law and not manifest way? Well, we believe based on his statement that the degenerative changes are secondary to the multiple surgeries show that this work incident, which necessitated these prior surgeries, brought upon the need for the 2005 back surgery. But you recognize Kornblatt does not support that argument. Kornblatt says it's a natural course of the lumbar degenerative and not related to the previous trauma. He's saying it's not related to the accident. I don't see how Kornblatt helps you. Okay. Well, moving on. We're reading it now. Yes. We have no new injury prior to the 2005 surgery. Specifically in 2002, the plaintiff saw treatment with Dr. Lopez. An MRI was taken of the back that showed changes at the surgical site. He continued to have symptoms in his back. And in 2004, another MRI was taken. And the findings on this MRI are objective. It showed changes. And then in 2005, the medical records note the plaintiff awoke at night without injury and developed radicular symptoms in back pain down the left side. Just awaking at night is not a new injury. It's our position there that this was all causally related to the initial work injuries. Furthermore, we believe the commission relied upon an invisible hearsay. It specifically ruled to disallow Dr. Kornblatt's Section 12 report based on a hearsay objection. However, in its decision in support of denying the 19-H and 8-A petitions, the commission almost quotes verbatim from page 4 of Dr. Kornblatt's report, relies on invisible evidence is never harmless error. And for that reason alone, the case should be remanded to the commission. Well, let me ask you about this body of law. Obviously, it's relied upon. Does the commission's consideration of improper and invisible evidence audit actually require reversal? Is that what the case law says? I believe so because it's specifically relying on that evidence and that error can never be harmless. What about Greeney versus the Industrial Commission? It doesn't stand for the proposition that when an examination of the record as a whole demonstrates that the erroneously admitted evidence is cumulative and does not prejudice the objecting party, the error in the admission is harmless. So there is a body of cases that you have to look at specific evidence. It isn't an automatic reversal. But we believe this is prejudicial, that the evidence as a whole does not support the commission's finding there. And was Kornblatt's, in light of his report, excuse me, in light of his deposition testimony, can it be argued that his report was cumulative? Well, we believe that his report contained more than what his deposition testimony would have elicited. For those reasons, we believe that the commission's decision was in error as a matter of law. Does any justices have any other questions? I don't think we do. We don't have time to reply. Thank you. Thank you. Counsel may respond. Justices, Robert Finley here on behalf of Henshaw and Culbertson in the Abilene. You've made some points with respect to Atwin's opening argument that I had as part of my prepared remarks. I guess I do want to open, if there are any questions or comments specifically as it pertains to the commission decision or our brief that I could answer for you. I don't believe we do. So just in summary, then, in terms of my prepared remarks, we do contest, number one, the standard of review that's been put forward by the ad hominem. I wouldn't spend a lot of time on it. It's manifestly, we know that. Okay. Here's the argument, as Justice Hudson has pointed out. The Greene case addresses the need to show prejudice. It's consistent amongst many areas of case law. There was also a kind of surprising attempt in the brief to introduce a temporary total disability issue here before this court, which was never made during the hearing proceeding, just that we believe is improper, as we had highlighted in our brief. We believe the commission here generally is taking a stand. That's kind of the significance here in terms of it's not going to tolerate every claim. It has to be a material change, clearly. A material change, and that there is a causative component on an 8A, even after a prior decision. They made that point clearly in the decision, looked at the inconsistent testimony of this petitioner, the incredible testimony of this petitioner, which started, in some respects, I think when he came into the hearing room with Hearing Officer Turrell, overseeing it with an interpreter when one was not needed 20 years ago at the original arbitration decision. What does that have to do with the issues in front of us? It only has to do with an emphasis on credibility. Great argument when you're appealing to people who rule by emotion, juries, sometimes arbitrators. Just get to the issues in the case and get us to it. Is it against the manifest way or isn't it? And why is it that the commission could believe Cornwell? Right, and clearly we've laid that out in our response brief. I thank you for your time, Justices. If there isn't anything else, then we'll move on. I want to know why you think they can believe Cornblatt when he finds no causal connection. Why can't they believe Cornblatt when he finds no causal connection? When he finds no causal connection. They have the discretion to make that determination. They base it on more than Cornblatt, but their finding in terms of Cornblatt is expressly laid out in their decision is that there is no causal connection due to the degenerative condition, which he believed ended a year after the original surgeries. And then they also indicate that the disc herniation, Cornblatt doesn't believe that that's related. It would have been the natural process some five years later of degenerative disc disease. But they also say other things beyond Cornblatt in support of that decision. The reason why I ask the question is when Cornblatt was deposed, he said that he took x-rays of the lumbar spine that showed degenerative disc disease at all levels, but mostly L4, L5, which was secondary in part to multiple surgeries he had at that level. Did he have surgeries at that level that were causally related to the injury for which he received compensation in the original hearing? 1997 and 1999 surgeries. Okay. So your opponent makes something out of that and says if it's secondary to the surgeries, then the degenerative disc disease, a treatment for it is recoverable. Now, there's any question. There's plenty of evidence in this record that his condition did not drastically change between the time of the first award and the 19-H. There's plenty of evidence for that. But the question becomes in addition to additional PPD, he also asked for additional medical. So why isn't he entitled to medical? He's not entitled to medical because, number one, Cornblatt, since we're on the doctor, Cornblatt opines that the disc herniation that there was surgery for in 2005 was not related. And the reason that he says it wasn't related was in part due to the gaps in time of the treatment. As well, Dr. Cornblatt's view was that the disability from the original accident ended a year after the surgeries in 1997 and 1999. So thus, although perhaps it was a bit clumsy in terms of the testimony, what the commission took from that or could have taken from it is that any other changes to his spine, conditions, etc., are unrelated to the original accident. They could have made that decision. So in other words, the petitioner, if they're going to bid for ADA, has to start over. And they have to find that it's reasonable, necessary, and related treatment. And they failed on the causation aspect. The other part is the credibility does come into play on that causation because what happens there is that they basically don't believe anything he said. So they basically had the discretion to decide, you know what, maybe we don't even believe that he just woke up with the problem in 2004. Maybe he was on the ladder. Maybe he was doing all the work that we eventually found him doing some years later. So they seem to have the discretion to say, you know what, I'm just not buying this. I'm not buying we can take your word that you just woke up with it. You didn't, by the way, it was such an easy tic-tac-toe. Why didn't you come and get your own doctor to give an opinion? You know, you didn't even get a doctor to do it. The best that he came up with was a statement in the surgeon's record of a recurrent herniation. But as the commission astutely pointed out, that doesn't cut the mustard in this type of case. What he needed to do is specifically show how and why the recurrent hernia did occur, and that just wasn't done. So in terms of causation and 8A, it's those aspects of the commission's decision that would seem to withstand review of your honors here in the appellate court. And the decision should be affirmed on all grounds. Very good. Thank you. Thanks, judges. Counsel, you may reply. Just as if I could state a brief reply, the surgeries at L4, L5 were found by the commission to be causally related. When I say surgeries, the 1997 and 1999 surgeries. I was going to bring this to the justice's attention in the record, but I believe you've already seen it. Your honors have seen it as 4270 to 4271 of the record. Dr. Kornblatt does state that the condition at L4, L5 is the result of surgical changes in the spine. I believe counsel stated that Dr. Kornblatt believes that the disability ended a year after the second surgery. Just because the disability ends, according to counsel in this doctor, does not mean the need for additional reasonable and necessary medical treatment following two spine surgeries ceases. Just because someone's disability has plateaued does not mean the need for additional reasonable and necessary medical treatment ceases. Furthermore, there's no evidence in the medical records, or the records anywhere, of a subsequent injury prior to plaintiff's 2005 lumbar surgery. Asking the court to speculate that plaintiff may have been hurt doing something else is uncalled for. It's speculation, and that should not be done by the court. The court needs to look at the record, what's in the evidence in the record, and make its determination as to whether this medical treatment was related. Any questions? I don't believe there are. Thank you, counsel. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement. Thank you. Thank you.